## IN THE DISTRICT COURT FOR OKLAHOMA COUNTY
## WESTERN DIVISION OF OKLAHOMA

| | |
|---|---|
| M. LEE ARNOLD, Derivatively on Behalf ) of, CHESAPEAKE ENERGY ) CORPORATION, )                     Plaintiff, ) vs. ) ) AUBREY K. MCCLENDON et al., )               Defendants, ) )      and ) ) CHESAPEAKE ENERGY ) CORPORATION, an Oklahoma ) corporation, )          Nominal Defendant. ) ) | Case No. 5:11-cv-00985-M |
| JAMES CLEM, Derivatively on Behalf of, ) CHESAPEAKE ENERGY ) CORPORATION, )                  Plaintiff, ) vs. ) ) AUBREY K. MCCLENDON et al., )               Defendants, ) )      and ) ) CHESAPEAKE ENERGY ) CORPORATION, an Oklahoma ) corporation, )          Nominal Defendant. ) ) | Case No. 5:11-CV-00997-M |

## MOTION TO CONSOLIDATE CASES AND
## TO APPOINT A LEAD COUNSEL STRUCTURE
## WITH MEMORANDUM OF LAW IN SUPPORT

COME NOW, M. Lee Arnold ("Arnold") and James Clem ("Clem" and

collectively with Arnold, "Plaintiffs"), and move the Court for an order: (1) consolidating the above-captioned shareholder derivative actions (collectively the "Actions"), as well as any subsequently filed, related action(s), for all purposes, including pretrial proceedings and trial, pursuant to Fed. R. Civ. P. 42; (2) appointing Robbins Umeda LLP (the "Robbins Firm") and Holzer Holzer & Fistel, LLC (the "Holzer Firm")  as co-lead counsel (collectively "Proposed Co-Lead Counsel"); and (3) appointing Holloway, Bethea & Osenbaugh, PPLC as liaison counsel.

## I.  INTRODUCTION

The above captioned Actions were filed by shareholders of Chesapeake Energy Corporation (the "Company" or "Chesapeake") derivatively on behalf of the Company. Each alleges that the officers and directors of Chesapeake breached their fiduciary duties to the Company and its shareholders and each seeks redress for waste of corporate assets, unjust enrichment and failure to oversee the Company.  Both Plaintiffs made pre-suit demands upon Chesapeake's Board of Directors (the "Board") and were provided identical responses.

Due to this substantial overlap of common issues of fact and law, the similarity of the defendants named in each of the Actions, and in the interests of efficiency and judicial economy, Plaintiffs seek an order formally consolidating the Actions and appointing a leadership structure for the consolidated action.  In making this request, Plaintiffs follow the guidance of the *Manual for Complex Litigation* (4th ed. 2011) ("*Manual*") and submit for the Court's approval a Proposed Consolidation Order, which provides for the consolidation of these related actions; establishes efficient procedures for

the filing and docketing of papers; proposes an organization of Plaintiffs' counsel; and otherwise eliminates wasteful and duplicative litigation.

## II. BACKGROUND

Chesapeake explores for and produces natural gas.   ¶1.[1]   It owns interests in nearly 40,000 natural gas and oil-producing wells. *Id.*  Defendant Aubrey K. McClendon ("McClendon") has served as the Company's Chief Executive Officer ("CEO") and Chairman of the Board since he co-founded Chesapeake in 1993. ¶2.

Throughout his employment with Chesapeake, Defendant McClendon participated in the Company's Founders Well Participation ("FWPP"), which permitted him to participate in all of the wells drilled by or on behalf of Chesapeake during each fiscal year. ¶¶38-39.   For each well in which defendant McClendon participates, the Company will bill him, on a monthly basis, an amount equal to his participation percentage multiplied by the costs incurred in drilling the well. ¶39.  According to Chesapeake's April 20, 2009 Proxy Statement, Defendant McClendon owned producing gas reserves with an estimated net present value of $191 million. ¶42.

During the Relevant Period, Defendant McClendon touted the fact he had never sold any of his Chesapeake common stock. ¶44.  However, nearly all of Defendant McClendon's personal holdings of Chesapeake stock were being used as collateral for

---

[1] Unless otherwise indicated, citations to "¶_" refer to paragraphs of the Verified Shareholder Derivative Complaint for Breach of Fiduciary Duties, Waste of Corporate Assets, and Unjust Enrichment filed by Plaintiff Arnold in the matter styled *Arnold v. McClendon et al.*, Case No. 5:11-cv-00985-M ("Arnold Cmplt.").

credit arrangements he had with several banks, including Goldman, Sachs & Co., and Lehman Brothers. *Id.* This excessive leveraging of Company stock threatened Defendant McClendon's ability to participate in the FWPP when the value of Chesapeake's stock dropped in late 2008.

Because of its poor financial performance, Chesapeake's stock fell from $74 per share in July 2008 to less than $10 per share by December 2008. ¶45. As Chesapeake's stock value plummeted, defendant McClendon faced margin calls requiring him to unload nearly all of his Chesapeake stock, forcing him to sell 94% of his Chesapeake stock for proceeds of over $569 million. ¶51. Chesapeake announced after the margin calls that McClendon had "involuntarily sold substantially all of his shares of Chesapeake common stock over the past three days in order to meet margin loan calls." *Id.* Over those three days, McClendon sold 31,522,923 shares of Chesapeake's common stock, and was left with 1,947,959 shares on October 10, 2008. *Id.*

After this forced sale, Chesapeake's Board of Directors approved a compensation package for Defendant McClendon designed to bail him out of his financial predicament. Chesapeake and Defendant McClendon entered a new employment agreement on or about January 7, 2009 even though he previously signed a five year employment contract just one year prior. ¶55. In addition to his $975,000 salary, Defendant McClendon received "bonus" compensation of $76,950,000 which consisted of a semi-annual cash bonus of $1.95 million and a one-time $75 million "well cost incentive award." *Id.* The $75 million award was structured as a net credit against future billings from the Company for well costs owed by McClendon under the FWPP. *Id.*

3

On September 6, 2011, Plaintiff Arnold filed his Verified Shareholder Derivative Complaint for Breach of Fiduciary Duties, Waste of Corporate Assets, and Unjust Enrichment.  On September 8, 2011, Plaintiff Clem filed his Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Waste and Unjust Enrichment.  On September 8, 2011, an Order Reassigning Case was entered in the Clem action and the matter was transferred to this Court.

Plaintiffs both allege that the Board of Directors breached their fiduciary duties by rubber stamping Defendant McClendon's personal bailout.  Given the substantial overlap of factual and legal issues arising from the above-alleged conduct, the Actions should be consolidated.

## III.   DISCUSSION

### A.      <u>Consolidation Pursuant to Fed. R. Civ. P. 42(a) is Appropriate.</u>

Consolidation of the Actions is appropriate because each of the Actions arise from similar allegations against similar defendants involving common questions of law and fact. FED R. CIV. P. 42(a).   Consolidation achieves convenience and economy in the administration of justice where complaints contain similar allegations, the relief sought is substantially the same, and the evidence would be similar in both cases.  *Resnik v. Woertz*, 774 F. Supp. 2d 614, 624-625 (D. Del. 2011); *In re Comverse Tech., Inc. Derivative Litig*., 2006 U.S. Dist. LEXIS 94235, at *6-8 (E.D.N.Y. Sept. 22, 2006).  In this case, the facts and law support consolidation of the above-captioned actions.  The central issues in each action are the same – namely, whether the Board's conduct in approving Defendant McClendon's 2008 compensation package constituted a breach of

the fiduciary duties owed to Chesapeake and its shareholders. *Sklar v. Bank of Am. Corp.*, 258 F.R.D. 260, 271-272 (S.D.N.Y. 2009) (noting "[d]ifferences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.") (internal citation omitted). Here, consolidation would not prejudice any of the parties and, indeed, consolidation is the most effective way of resolving these parallel litigations.

Plaintiffs submit herewith a proposed order granting this motion (the "Proposed Order"), which provides that the files of the Actions shall be maintained in one file under Master Case No. 5:11-cv-00985-M.  If the Court grants this motion, every pleading filed in the consolidated action shall bear the following caption:

**IN THE DISTRICT COURT FOR OKLAHOMA COUNTY**
**WESTERN DIVISION OF OKLAHOMA**

| IN RE CHESAPEAKE ENERGY SHAREHOLDER DERIVATIVE LITIGATION | ) ) ) ) | Case No. 5:11-cv-00985-M  Relating to:  [                    ] |
|---|---|---|

Further, the Proposed Order also provides for consolidation of any future case(s) brought on behalf of Chesapeake shareholders arising from the events described in the complaints which are filed in, removed to or transferred to this Court and alleging that demand upon the Board was wrongfully rejected or ignored.  Among their other duties, Proposed Co-Lead Counsel shall work to ensure that counsel in any subsequently filed action that properly belongs as part of *In re Chesapeake Shareholder Derivative*

*Litigation* receives notice of the Proposed Order.

**B.     The Court Should Appoint the Robbins Firm and the Holzer Firm as Co-Lead Counsel**

The Proposed Order implements the procedures suggested by the *Manual* for complex, multi-party cases such as the Actions by designating co-lead counsel. *See Manual* § 10.22; *Sklar*, 258 F.R.D. at 271-272 ("While not statutorily required, the appointment of interim class counsel [in derivative actions] may be helpful in 'clarify[ing] responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.'").   Plaintiffs respectfully submit that designating lead counsel will promote the orderly progress of the Actions and ensure that they are prosecuted in an efficient and coordinated fashion.   In selecting lead counsel, the "guiding principle" is who will "best serve the interest of the plaintiffs."   *Millman v. Brinkley*, 2004 U.S. Dist. LEXIS 20113, *9 (N.D. Ga. Oct. 1, 2004).

Here, the Robbins Firm and the Holzer Firm are well qualified to serve as co-lead counsel.   Both firms have demonstrated a commitment to diligently and vigorously litigating the Actions on behalf of Plaintiffs. And as demonstrated below, both firms are well versed in the unique challenges posed by class actions, in general, and shareholder derivative litigation, specifically.   The appointment of the Robbins Firm and the Holzer Firm will advance the consolidated case in an orderly and efficient manner.

 As suggested by the *Manual*, upon entry of the Proposed Order, Proposed Co-

Lead Counsel will be responsible for the day-to-day conduct of the litigation and for carrying out the Orders of the Court concerning the conduct of the litigation. Specifically, Proposed Co-Lead Counsel will be:

> charged with formulating (in consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation . . . presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met.

*See Manual* at § 10.221. Proposed Co-Lead Counsel are also charged with responsibility for monitoring the time and expenses of all plaintiffs' counsel to ensure that this litigation is conducted efficiently and without duplication. *See* Proposed Order at ¶4; *see also Manual* § 10.221. The Proposed Order specifically lists Co-lead Counsel's responsibilities. *Id.*

As stated in the *Manual,* in determining who should serve as lead counsel, the Court should conduct an independent review to ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable. *Id.* at § 10.224. Indeed, the most important factor is "achieving efficiency and economy without jeopardizing fairness to parties." *Id.* at § 10.221. Here, the appointment of the Robbins Firm and the Holzer Firm would advance the goals of the litigation and the benefit the parties.

Accordingly, Plaintiffs respectfully request consolidation of the two related actions captioned above and appointment of the Proposed Co-Lead Counsel.

1.     **Plaintiffs' Proposed Co-Lead Counsel Have Demonstrated A Commitment To Identifying And Investigating Potential Claims In The Actions.**

Proposed Co-Lead Counsel, on behalf of their respective clients, have demonstrated a firm commitment to vigorously and effectively prosecuting this lawsuit. *Sklar*, 258 F.R.D. at 31 (considering "the work counsel has done in identifying or investigating potential claims in the action" when appointing co-lead counsel in derivative action).   The Robbins Firm and the Holzer Firm each sent initial demand letters to Chesapeake's Board more than year ago and have diligently pursued efforts to remedy the defendants alleged wrongdoing ever since.[2]   Relying on their extensive experience in bringing and pursuing class action claims such as those asserted here, Proposed Co-Lead Counsel fully understand the substantial investment of time and resources necessary to properly pursue and lead the Actions, and are committed to making the necessary investment in the Actions.

2.     **Proposed Co-lead Counsel Have Experience In Complex Shareholder Litigation, Have Experience In Litigating The Types Of Claims Asserted In The Actions, And Have Knowledge Of The Law Applicable In The Actions.**

Courts generally consider counsels' experience and expertise in determining whether to appoint class counsel.  *See, e.g.*, *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) (explaining that the "most persuasive" factor in choosing lead counsel may be proposed counsel's "experience in, and knowledge of, the applicable law in this field"); *Sklar,* 258 F.R.D. at 31.  Here, Proposed Co-Lead

---

[2] In fact, the Robbins Firm, on behalf of Plaintiff Arnold, sent an initial demand letter to the Board on July 24, 2009.  *See Arnold Cmplt.*  at Ex. 1.

Counsel are extremely qualified to serve as co-lead counsel in the Actions.

### a.      The Robbins Firm

The Robbins Firm, located in San Diego, California, is an experienced shareholder derivative litigation law firm.  The firm is well-known for its extensive experience in prosecuting derivative actions and has demonstrated its ability to efficiently, aggressively, and effectively litigate these types of actions and protect the interests of shareholders.  The Robbins firm has played a substantial role in some of the most successful shareholder derivative actions in the United States.[3]  For example, as lead counsel, the Robbins Firm played a central role in securing $70 million and comprehensive corporate governance reforms on behalf of Cardinal Health, Inc., among the largest monetary recoveries ever in a shareholder derivative action.  *See* Ex. A to the Declaration of Kenyatta R. Bethea In Support of Plaintiffs' Motion to Consolidate Cases and to Appoint A Lead Counsel Structure ("Bethea Decl.").  Additionally, in *In re OM Group, Inc. Derivative Litigation*, No. 1:03-cv-0020, in the Northern District of Ohio, the Robbins Firm was appointed lead counsel and secured $29 million for OM Group, the termination of the company's long term CEO, the addition of two shareholder-nominated directors, and a number of other targeted corporate governance reforms. *Id.*

In addition to its track record of success in shareholder derivative actions, the Robbins Firm has also successfully litigated numerous class actions on behalf of shareholders.  Within the last few years alone, Robbins Firm attorneys have acted as

---

[3] The Robbins Firm's resume is attached as Exhibit B to the Bethea Decl.

lead or co-lead counsel representing classes of public shareholders challenging the adequacy of disclosures and the value of consideration offered in several large corporate transactions. These include (i) Chevron Corporation's $17.4 billion acquisition of Unocal Corp., in which the Robbins Firm obtained improved disclosures and an additional $500 million for the shareholder class; (ii) the $13 billion acquisition of Electronic Data Systems Corp., in which attorneys at the Robbins Firm secured a $25 million dividend as part of settlement; and (iii) the $1.6 billion acquisition of PETCO Animal Supplies, Inc. in which Robbins Firm attorneys helped secure a $16 million common fund. *See id.*

In addition to its substantive experience, the Robbins Firm possesses the financial resources, and the demonstrated willingness to invest such resources, necessary to litigate this complex derivative matter vigorously and effectively on behalf of Chesapeake and its shareholders. The Robbins Firm, therefore, is well qualified to serve as co-lead counsel in this action.

### b.    The Holzer Firm

The Holzer Firm, located in Atlanta, Georgia, has dedicated its practice to the enforcement of the rights that federal and state laws afford investors, consumers, and businesses harmed by the misconduct of others. Since its inception more than a decade ago, the Holzer Firm has established an excellent reputation for innovative representation of its clients through a nationwide practice. The Holzer Firm has experience prosecuting complex cases, such as the Actions, on behalf of shareholders. The Holzer Firm currently serves in court-appointed leadership roles representing shareholders in

numerous cases throughout the country, including as co-lead counsel in *In re WebMD Corp. Shareholder Deriv. Litig.,* Civil Action No. 11-CV-6506-NRB (S.D.N.Y.); *Miller v. Anthony et al.*, Civil Action No. 09-cv-1811-JOF (N.D. Ga.) (Synovus Financial Corp. derivative litigation), among others. [4] The firm recently has concluded the successful representation of shareholders in other derivative actions, including *In re Sequenom, Inc. Derivative Litigation,* Lead Case No. 09-CV-1341 (S.D. Cal) (co-lead counsel), *Mitchell v. Gozani, et al.* (Neurometrix Deriv. Litig.), Case No. 08-CV-10674-RWZ (D. Mass) (same) and *In re Home Depot Inc. Derivative Litigation*, Master File No: 1:07-CV-0356-RLV (N.D.Ga.) (same). *See* Ex. B to the Bethea Decl.

The Holzer Firm also represents shareholders in class action litigation arising out of violations of the federal securities laws and litigates class actions on behalf of investors pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). The Holzer Firm is currently serving as court appointed co-lead counsel in multiple securities fraud class actions pending nationwide, including *Sgalambo v. McKenzie et al.* (Canadian Superior Energy Inc. Securities Litigation), Case No. 1:09-cv-10087-SAS (S.D.NY) (co-lead counsel); *Lucescu v. Zafirovski et al.,* (Nortel Networks Corp. Securities Litig.), Civil Action No. 1:09-cv-04691-SAS (S.D.N.Y.) (same); *Hutchins v. NBTY, Inc. et al.,* Civil Action No. 10-CV-2159-LDW(E.D.N.Y.) (same). *See* Ex. B to the Bethea Decl. The firm has successfully litigated consumer class actions and class actions alleging violations of federal and state civil Racketeering and Corrupt

---

[4] The Holzer Firm's resume is attached as Ex. C to the Bethea Decl.

Organizations Acts both in Georgia and nationwide, such as *Brenner et al. v. Future Graphics, LLC et al.*, Case No.: 1:06-CV-0362-CAP (N.D. Ga.).

This experience, along with the many other shareholder and class action matters the Holzer Firm has litigated over the past decade make it well-suited for its proposed role in this action.  *Id.*

### 3.    Holloway, Bethea & Osenbaugh, PPLC Should Be Appointed as Liaison Counsel

This Court should also appoint Holloway, Bethea & Osenbaugh, PPLC as Liaison Counsel.  As Liaison Counsel, Holloway, Bethea & Osenbaugh, PPLC will be primarily responsible for communicating with the Court and with other counsel, and in the coordination and prosecution of this complex litigation.  *See Manual* § 10.221. Holloway, Bethea & Osenbaugh, PPLC is well suited for this role as a local firm with extensive and complex litigation experience.

### IV. CONCLUSION

For the foregoing reason, Plaintiffs respectfully request the Court enter the Proposed Order consolidating the related actions ad appointing the Robbins Firm and the Holzer Firm as co-lead counsel.

Submitted this 14th  day of November, 2011.

HOLLOWAY, BETHEA & OSENBAUGH
KENYATTA R. BETHEA, OBA# 18650


_____/s/ Kenyatta R. Bethea_____
Kenyatta R. Bethea

3035 N.W. 63rd, Suite 102N
Oklahoma City, OK 73116
Telephone: 405.246.0600
Facsimile: 405) 246-0601
kbethea@hbolaw.com

*Proposed Liaison Counsel*

-and-

Michael I. Fistel, Jr.
Marshall P. Dees
HOLZER HOLZER & FISTEL, LLC
200 Ashford Center North, Suite 300
Atlanta, GA 30338
Telephone: 770.392.0090
Facsimile: 770.392.0029

13