**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| M. LEE ARNOLD, derivatively on behalf of, CHESAPEAKE ENERGY CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CIV-11-985-M |
| AUBREY K. McCLENDON, et al., | ) ) ) | |
| Defendants. | ) | |
| JAMES CLEM, derivatively on behalf of CHESAPEAKE ENERGY CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CIV-11-997-M |
| AUBREY K. McCLENDON, et al., | ) ) ) | |
| Defendants. | ) | |

**ORDER**

Before the Court is Jacob Shochat's ("Shochat") Motion for Leave to Intervene, filed May 15, 2012. On May 23, 2012, plaintiffs filed their response, and on May 24, 2012, Shochat filed his reply. Based upon the parties' submissions, the Court makes its determination.

I.   Introduction

Chesapeake Energy Corporation ("Chesapeake") is in the business of exploration for and production of natural gas. Since he founded the company in 1989, defendant Aubrey K. McClendon ("McClendon") has served as Chesapeake's Chief Executive Officer and Chairman of the Board.

Plaintiffs allege that since Chesapeake's initial public offering ("IPO") in 1993, McClendon has participated in the Founder's Well Participation Program ("FWPP"), whereby he is permitted

to participate in all of Chesapeake's wells. Plaintiff further alleges that the stated purpose of the program, as presented to the shareholders when Chesapeake was seeking approval, is to retain and motivate the founders and align their interests with Chesapeake's interests. McClendon owns producing gas reserves with an estimated net value of $191 million and has invested in almost every one of Chesapeake's wells since the IPO.

In 2008, Chesapeake was named the worst performing oil and gas producer in the Standard & Poor's ("S&P") 500. According to plaintiff, on October 8-10, 2008, McClendon received margin calls that required him to liquidate 94% of his Chesapeake stock. Plaintiff alleges that a few days prior to Chesapeake's October 10, 2008 announcement of the margin calls, three Chesapeake directors sold their personally held shares of Chesapeake stock for more than $5.2 million in proceeds. *The Financial Times* rated McClendon as the lowest ranking CEO of energy companies in terms of the value provided to shareholders in 2008.

The Board of Directors for Chesapeake ("Board") approved an amended employment agreement that paid McClendon a total of $124 million in 2008. The compensation package included a $77 million bonus, $75 million of which was a well cost incentive award structured as a net credit against future billings from Chesapeake for costs McClendon owed under the FWPP. The compensation also included a $12.1 million payment from Chesapeake to McClendon for the purchase of McClendon's personal collection of antique maps. According to plaintiff, McClendon's 2008 compensation was not based upon his performance or Chesapeake's performance under his watch.

In September 2011, plaintiffs filed their verified shareholder derivative complaints against members of the Board and executive officers, requesting the Court to order recession of

McClendon's amended employment agreement and order disgorgement of the alleged insider trading profits. On November 1, 2011, in a separate shareholder derivative case that plaintiff filed in the District Court of Oklahoma County, State of Oklahoma regarding McClendon's 2008 compensation, the parties filed a proposed settlement. On March 14, 2012, upon the parties' joint request, the Court stayed all proceedings in this matter until 30 days after the Supreme Court of Oklahoma has resolved plaintiffs' appeal of the District Court of Oklahoma County, State of Oklahoma's final approval of settlement.

Subsequently, Reuters revealed that McClendon engaged in a series of financial transactions in which he pledged his interests in the FWPP as collateral for loans obtained from private equity firms. On May 1, 2012, in *Shochat v. McClendon, et al.*, CIV-12-488 (W.D. Okla. May 1, 2012), Shochat filed his Verified Shareholder Derivative Complaint ("Shochat's Complaint").

On May 3, 2012, plaintiffs filed their Motion to Lift Stay. Plaintiffs move to lift the stay in this matter as to amend their complaints. Now before the Court is Shochat's Motion for Leave to Intervene.

II.     Discussion

Under Federal Rule of Civil Procedure 24(a)(2), an applicant may intervene as of right if: (1) the application is "timely"; (2) "the applicant claims an interest relating to the property or transaction which is the subject of the action"; (3) the applicant's interest "may as a practical matter" be "impair[ed] or impede[d]"; and (4) "the applicant's interest is [not] adequately represented by existing parties." *Utahns for Better Transp. v. United States Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) (quoting Fed. R. Civ. P. 24(a)(2)).

Further, the Tenth Circuit "follows a somewhat liberal line in allowing intervention." *Utah

*Ass'n Counties v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001). "[T]he factors mentioned in the Rule are intended to capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation. Those factors are not rigid, technical requirements." *San Juan Cnty., Utah v. United States*, 503 F.3d 1163, 1195 (10th Cir. 2007). Thus, "[i]ntervention should be granted of right if the interests favoring intervention outweigh those opposed." *Id.*

    A.    <u>Timeliness</u>

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." *Utah Ass'n*, 255 F.3d at 1250 (internal quotations and citation omitted).

In the case at bar, the Court finds Shochat has timely filed his motion to intervene. Particularly, a careful review of the file in this matter reveals that Shochat filed his motion within twelve days of plaintiffs' Motion to Lift Stay. Moreover, plaintiffs do not dispute that Shochat's motion was timely filed.

Therefore, the Court finds that Shochat has satisfied the timeliness requirement set forth under Rule 24(a)(2).

    B.    <u>Interest</u>

A party seeking to intervene as a matter of right must show that "it has an interest in the proceedings which is 'direct, substantial, and legally protectable.'" *City of Stilwell v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996) (quoting *Alameda Water & Sanitation Dist. v. Browner*, 93 F.3d 88, 90 (10th Cir. 1993)). "[T]he interest test is primarily a practical guide to

4

disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *San Juan Cnty.*, 503 F.3d at 1195 (internal quotations and citation omitted).

Additionally, Delaware law draws a distinction between demand futility cases and demand cases.[1]  *In re HP Derivative Litig.*, Nos. 5:10–cv–03608 EJD, 5:11–cv–01058 EJD, 2011 WL 5914216, at *1 n.3 (N.D. Cal. Nov. 28, 2011) (citing *Levine v. Smith*, 591 A.2d 194, 212 (Del. 1991)). "A shareholder plaintiff, by making demand upon a board before filing suit, 'tacitly concedes the independence of a majority of the board to respond.'" *Id.*

Here, the Court finds that Shochat is a concerned party in this matter as plaintiffs' Motion to Lift Stay would permit plaintiffs to amend their complaints to include claims found in Shochat's Complaint.  Shochat has an interest in this matter – specifically, to oppose plaintiffs' amended complaint – because plaintiffs' complaints include issues that are pending settlement in the District Court of Oklahoma County, State of Oklahoma.  Moreover, Shochat has an interest in opposing plaintiffs' motion to lift stay to amend their complaints because Shochat's Complaint is a demand futility case, whereas plaintiffs' complaints are a demand case based upon plaintiffs' demand letter sent to the Board.[2]  In light of the distinctions drawn between Shochat's Complaint and plaintiffs' complaints, the Court finds that Shochat has a protectable interest in objecting to plaintiffs' motion

---

[1] "[I]n the absence of Oklahoma authority [courts] may consult decisions from the courts of Delaware and other jurisdictions concerning derivative actions." *Beard v. Love*, 173 P.3d 796, 802 (Okla. Civ. App. 2007).

[2] Plaintiffs assert, based upon *Seibert v. Harper & Row, Pub., Inc.*, CIV. A. No. 6339, 1984 WL 21874 (Del. Ch. Dec. 5, 1984), a prior demand letter cannot concede the independence of the majority of the board to respond when new facts are known. However, upon careful review of *Seibert*, the Court finds that *Seibert* addressed whether a letter in that case was a demand letter. Accordingly, *Seibert* has no bearing on the matter before this Court.

to lift stay.

Therefore, the Court finds that Shochat has satisfied the interest requirement set forth in Rule 24(a)(2).

### C. Impairment of Protected Interest

Regarding the impairment of interest element under Rule 24(a)(2), the Tenth Circuit has opined that:

> the Rule refers to impairment as a practical matter. Thus, the court is not limited to consequences of a strictly legal nature. To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal.

*Utah Ass'n*, 255 F.3d at 1253 (internal quotations and citation omitted). Here, the Court finds that Shochat has the possibility of his interests being impaired if his motion to intervene were denied. As discussed in Part II.A.2, if Shochat does not intervene, Shochat's Complaint could tacitly concede the independence of a majority of the Board to respond to its demand.

Therefore, the Court finds that Shochat has satisfied the impairment of interests requirement under Rule 24(a)(2).

### D. Inadequate Representation

"Although an applicant for intervention as of right bears the burden of showing inadequate representation, that burden is the minimal one of showing that representation may be inadequate. The possibility that the interests of the applicant and the parties may diverge need not be great in order to satisfy this minimal burden." *Utah Ass'n*, 255 F.3d at 1253 (internal quotations and citation omitted).

Having carefully reviewed the parties' submissions, the Court finds that Shochat has

established the possibility that his interests and plaintiffs' may diverge. Particularly, plaintiffs move to lift stay as to amend their complaints, whereas Shochat contends that the Order staying this case should not be lifted because this matter and Shochat's Complaint involve separate facts and legal issues.

Therefore, the Court finds that Shochat has satisfied the inadequate representation requirement as set forth under Rule 24(a)(2). Accordingly, based upon the discussion above, the Court finds that Shochat has satisfied the requirements for intervention as of right.[3]

III.    Conclusion

For the reasons set forth above, the Court GRANTS Shochat's Motion for Leave to Intervene [docket no. 48].

**IT IS SO ORDERED this 1st day of June, 2012.**

*/s/ Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Shochat also moves for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). In light of the Court's finding that Shochat has satisfied the requirements for intervention as of right, the Court declines to address whether Shochat should be granted permissive intervention.