# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| M. LEE ARNOLD, derivatively on behalf of CHESAPEAKE ENERGY CORPORATION, | ) ) ) | CASE NO. CIV-11-985-M |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| AUBREY K. McCLENDON, *et al.*, | ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| CHESAPEAKE ENERGY CORPORATION, an Oklahoma Corporation, | ) ) ) | |
| Nominal Defendant. | ) ) | |

| | | |
|---|---|---|
| JAMES CLEM, derivatively on behalf of CHESAPEAKE ENERGY CORPORATION, | ) ) ) | CASE NO. CIV-11-997-M |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| AUBREY K. McCLENDON, *et al.*, | ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| CHESAPEAKE ENERGY CORPORATION, an Oklahoma Corporation, | ) ) ) | |
| Nominal Defendant. | ) ) | |

# INTERVENOR SHOCHAT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO LIFT STAY

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

FACTS AND PROCEDURAL HISTORY ...................................................................... 3

ARGUMENT.................................................................................................................... 8

  I. JUDICIAL ECONOMY WEIGHS IN FAVOR OF CONTINUING TO
STAY THIS ACTION ................................................................................................ 9

  II. "DEMAND MADE" AND "DEMAND EXCUSED" CASES ARE
SUBSTANTIVELY AND CRUCIALLY DIFFERENT AND, THEREFORE,
SHOULD BE NOT CONSOLIDATED ..................................................................... 15

CONCLUSION .............................................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*Aerotel, Ltd. v. Verizon Commc'ns, Inc.*, 234 F.R.D. 64 (S.D.N.Y. 2005) ...................... 13

*Allison v. Gen. Motors Corp.*, 604 F. Supp. 1106 (D. Del. 1985) .................................... 21

*Beard v. Love*, 173 P.3d 796 (Okla. Civ. App. 8/28/07) ......................................... 9, 11, 18

*Bruno v. Borough of Seaside Park*, Civ. No. 04-5084,
    2006 U.S. Dist. LEXIS 56758, (D.N.J. Aug. 11, 2006) .................................................. 13

*Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949) ...................................... 9

*Goldman v. Northrup Corp.*, 603 F.2d 106 (9th Cir. 1979) .............................................. 12

*Hargrave v. Canadian Valley Elec. Co-op., Inc.*, 792 P.2d 50 (Okla. 1990) .................... 18

*In re AOL Time Warner Shareholder Litigation*,
    Master File No. 02-CV-6302 (S.D.N.Y.) ............................................................... 17, 18

*In re Bank of America Corp. Securities, Derivative & ERISA Litigation*,
    258 F.R.D. 260 (S.D.N.Y. 2009) ...................................................................................... 9

*In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir. 1992) ......................... 16

*In re Merrill Lynch & Co., Inc., Sec., Deriv. and ERISA Litig.*,
    No. 01 Civ. 9633, 2011 WL 1134708 (S.D.N.Y. Mar. 28, 2011) ............................... 21

*In re Moody's Corp. S'holder Deriv. Litig.*,
    Master File No. 1:08-CV-9323 (S.D.N.Y.) .................................................................... 18

*In re Repetitive Stress Injury Litig.*, 11 F.3d 368 (2d Cir. 1993) ..................................... 16

*Johnson v. Celotex Corp.*, 899 F.2d 1281 (2d Cir. 1990) ................................................. 16

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991) ................................................. 9, 11

*Lewis v. Graves*, 701 F.2d 245 (2d Cir. 1983) ........................................................... 20, 21

*Levine v. Smith*, 591 A.2d 194 (Del. 1991) .................................................................. 17, 18

*Long v. Dickson*, No. 06-4012-SAC,
  2006 U.S. Dist. LEXIS 47377 (D. Kan. Jan. 1, 2006) ................................................... 13

*Seibert v. Harper & Row Publishers, Inc.*,
  1984 WL 21874 (Del. Ch. Dec. 5, 1984) ....................................................................... 20

*Shlensky v. Dorsey*, 574 F.2d 131 (3d Cir. 1978) .............................................................. 12

*Walden v. Elrod*, 72 F.R.D. 5 (W.D. Okla. 1976) ............................................................. 18

*Weston v. Acme Tool, Inc.*, 441 P.2d 959 (Okla. 1968) ................................................. 9, 11

**Rules**

Rule 42 of the Federal Rules of Civil Procedure ................................................................. 16

Intervenor Jacob Shochat ("Intervenor Shochat" or "Shochat"), respectfully submits this memorandum of law in opposition to the motion by Plaintiffs M. Lee Arnold and James Clem (collectively, "Plaintiffs") for an order lifting the stay of all proceedings in this consolidated shareholder derivative action (the "Consolidated Action") dated March 14, 2012 (the "Stay Order" or "Stay"). Plaintiffs' motion is referred to herein as the "Lift Stay Motion" or the "Motion." *See* Dkt. No. 44.[1]

## PRELIMINARY STATEMENT

The Lift Stay Motion should be denied in its entirety. Plaintiffs are seeking to lift the Stay Order for the purpose of filing an amended complaint, but the proposed amended complaint covers an entirely different subject matter as Plaintiffs' initial complaints, which were filed in 2011. Those initial complaints alleged that members of the Board of Directors of Chesapeake Energy Corporation ("Chesapeake" or the "Company") breached their fiduciary duties in 2008 by, among other things, approving an excessive compensation package for the Company's CEO, Aubrey McClendon ("McClendon"). Plaintiffs' original claims are encompassed by a settlement (the "Settlement") reached in a parallel consolidated derivative action (the "State Court Action"), which alleged similar claims related to McClendon's 2008 compensation package and which was filed in the District Court of Oklahoma County, State of Oklahoma (the "State Court"). The Settlement was approved by the State Court on January 20, 2012, despite the Plaintiffs' objections thereto, and the Plaintiffs have appealed approval of the Settlement. *See* Dkt.

---

[1]     Unless otherwise indicated, citations to "Dkt. No. _" refer to the Docket for the instant lead case, *Arnold v. McClendon, et al.*, No. 5:11-cv-985-M.

No. 42.  Pending the resolution of that appeal, and at Plaintiffs' own behest, this Court entered the Stay Order, which is currently in place until the resolution of that appeal. Dkt. Nos. 42, 43.

Now—six months after filing their complaints and over two months after filing their appeal of the Settlement and requesting that the Court stay this action—Plaintiffs seek to amend their complaint to add new, unrelated allegations concerning McClendon and Chesapeake.  Plaintiffs are taking this step for the sole purpose of arguing that these new claims are outside of the scope of the claims released by the Settlement and that Plaintiffs should be allowed to prosecute these new claims on behalf of Chesapeake. However, Plaintiffs' "new" claims are substantively identical to claims that at least twelve other shareholders have filed as original actions in the last several weeks— including six shareholders who commenced new legal actions *before* Plaintiffs saw fit to seek leave to file an amended complaint.  Lifting the Stay would unfairly prejudice these new shareholders, including Shochat, by subjecting the new claims to delays inherent from the appeal of Settlement in State Court, to say nothing of the possible preclusive effect which might be argued to apply to the new claims by the Settlement itself. Moreover, the only purpose that would be served by allowing Plaintiffs to prosecute the new claims in an amended complaint is to punish Shochat and other Chesapeake shareholders who acted with zeal and alacrity by filing original complaints based on the new information while Plaintiffs sat idly by and cooked up a proposed amended complaint that improperly asserts both "Demand Made" and "Demand Excused" claims

2

within the same pleading.[2]  There is no basis in law or equity for Plaintiffs' attempt to belatedly and improperly amend their complaint, and take control of the new allegations, in these circumstances.  Accordingly, there is no basis to lift the Stay Order, and the Lift Stay Motion should be denied.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs filed their initial complaints in this Court some eight months ago,[3] alleging that members of the Chesapeake Board of Directors (the "Board") breached their fiduciary duties by approving a compensation package for McClendon on December 31, 2008, that provided him more than $75 million after the 2008 financial crash resulted in the forced sale of nearly all his Chesapeake stock and agreeing to purchase his personal art collection for $12.1 million.  *Arnold* Compl. ¶ 7-8, 10; *Clem* Compl. ¶¶ 3, 8-9, 12. Plaintiffs alleged that McClendon, while stating that he had never sold his Chesapeake shares, failed to reveal to investors that he had leveraged most of his shares as collateral in a variety of financing transactions.  *Arnold* Compl. ¶ 4; *Clem* Compl. ¶ 6.  McClendon, as one of the Company's founders, was given the opportunity to participate in the Founder Well Participation Program ("FWPP").  *Arnold* Compl. ¶ 3; *Clem* Compl. ¶ 4. By participating in the FWPP, McClendon was able to personally obtain ownership

---

[2]    As demonstrated herein, these two types of shareholder derivative complaints (alleging different theories as to how the pre-suit demand requirement is satisfied) are categorically different and mutually contradictory.  Consolidation of complaints alleging both types into a single case is heavily disfavored.  *See infra*, part II.

[3]    *See M. Lee Arnold v. Aubrey K. McClendon, et al.,* Case No. CIV-11-985-M (W.D. Okla., filed Sept. 6, 2011) (the "*Arnold* Action" or "*Arnold* Compl.") and *James Clem v. Aubrey K. McClendon, et al.,* Case No. CIV-11-997-M (W.D. Okla., filed Sept. 8, 2011) (the "*Clem* Action" or "*Clem* Compl.").

interests in the Company's wells valued at more than $190 million. *Arnold* Compl. ¶ 3; *Clem* Compl. ¶¶ 4-5. After Chesapeake reported disappointing financial results in 2008, the value of Chesapeake's shares dropped dramatically, and McClendon was forced to liquidate 94% of his Chesapeake stock to meet margin calls on his holdings. *Arnold* Compl. ¶ 5; *Clem* Compl. ¶ 6. In order to solve his personal financial crisis, McClendon recommended that the Board approve bonuses of over $75 million in addition to his salary. *Arnold* Compl. ¶ 7; *Clem* Compl. ¶ 8. Despite Chesapeake's poor performance in 2008, the Board approved the bonuses, and further purchased McClendon's personal art collection for $12.1 million, relying solely on McClendon's personal art dealer to value the collection. *Arnold* Compl. ¶¶ 7-8; *Clem* Compl. ¶¶ 8-9. McClendon's $124 million in total compensation made him the highest paid CEO of all companies in the S&P 500. *Arnold* Compl. ¶¶ 8-9.

Both complaints noted that each of the Plaintiffs separately had made a formal pre-suit demand on the Board to assert the legal claims, and that such a demand had been improperly refused. *See Arnold* Compl. ¶¶ 95-99 & Exhibit 1; *Clem* Compl. ¶¶ 64-80 & Exhibit 1. A December 23, 2011 Order consolidated the *Arnold* Action and the *Clem* Action. Dkt. No. 39. On March 14, 2012, the Court signed the Stay Order, which stayed this litigation until 30 days after the Supreme Court of Oklahoma resolves the appeal of the Settlement filed by the Plaintiffs on February 29, 2012. Dkt. No. 43.

On May 1, 2012, Intervenor Shochat filed a shareholder derivative action in this Court on behalf of Chesapeake for harm inflicted upon Chesapeake by its officers and

directors from before 2009 to the present (the "*Shochat* Action").[4]  The *Shochat* Action alleges that certain directors and officers of Chesapeake (collectively, the "Individual Defendants" and, together with the nominal defendant Chesapeake, the "Defendants") violated state law, including breaches of fiduciary duties, misappropriation of corporate assets, and unjust enrichment.  Intervenor Shochat alleges that Individual Defendants, among other misconduct, caused Chesapeake to initiate a course of conduct that was designed to and did:  (i) conceal that McClendon had taken out $1.1 billion in loans secured by wells which were jointly operated with Chesapeake; and (ii) conceal that McClendon was borrowing funds from an entity which also lent funds to Chesapeake and which created a clear conflict of interest and usurpation of corporate assets and/or opportunities.  *Shochat* Compl. ¶ 56.  Moreover, each of the Individual Defendants aided and abetted and rendered substantial assistance to effectuate the commission of the wrongdoings.  *Shochat* Compl. ¶¶ 57-59.

Further, as noted above, one of Chesapeake's founders, and its current Chief Executive Officer, McClendon, participates in a program unique among natural gas producers, the FWPP.  *Shochat* Compl. ¶ 2.  Under the FWPP, McClendon pays a 2.5% portion of the upfront costs associated with the drilling of a new well, and in consideration receives a portion of the revenue generated from the new wells, capped at

---

[4]     *Jacob Shochat v. Aubrey C. McClendon, et al.* Case No. CIV-12-488-M (W.D. Okla.).  The *Shochat* Action is currently pending before this Court.  A copy of the Verified Shareholder Derivative Complaint filed in this action (the "*Shochat* Compl.") is attached as Exhibit 2 to the Declaration of Don S. Strong filed on May 15, 2012 in support of Intervenor Shochat's motion to intervene and in opposition to the Lift Stay Motion, Dkt. No. 48-1 ("Strong Decl.").

2.5%. Chesapeake pays the upfront costs for both activities—to purchase an interest in attractive natural gas acreage and to start the well; McClendon only participates in the latter activity. Thus, despite statements made by the Defendants to the contrary, under the FWPP, McClendon does not invest alongside the Company, on equal terms, but rather receives a better deal than Chesapeake and the shareholders. To wit, unlike the Company, McClendon *only participates in drilling in the useful areas, and suffers nothing from the purchases of nonproductive acreage*. *Shochat* Compl. ¶ 7.

As alleged in the *Shochat* Complaint, McClendon is anxious to keep participating in the FWPP, despite the expensive upfront cost. While McClendon hopes that his interest in the new Chesapeake wells will pay off in the long term, it is clear that in the short term, participation leaves him substantially in debt. In 2010, while he received revenues from his participation in the FWPP of $127 million, he had to put up $268 million for his share of costs, yielding a net capital loss of $142 million. His problems have been exacerbated by rapidly falling natural gas prices. *Shochat* Compl. ¶ 8.

A total of twelve shareholder lawsuits involving the same or similar alleged misconduct of Chesapeake's officers and directors are currently pending in this Court, namely, the *Shochat* Action and:

(i) *Deborah G. Mallow IRA SEP Inv. Plan, et al., v. McClendon, et al.*, Case No. CIV-12-436-M (W.D. Okla., filed on Apr. 19, 2012);

(ii) *Snyder v. McClendon, et al.*, Case No. CIV-12-437-M (W.D. Okla., filed on Apr. 20, 2012);

(iii) *Dolezal Family Ltd. P'ship v. McClendon, et al.*, Case No. CIV-12-477-M (W.D. Okla., filed on Apr. 30, 2012);

(iv) *Leonard v. McClendon, et al.*, Case No. CIV-12-479-M (W.D. Okla., filed on Apr. 30, 2012);

(v)      *David A. Kroll Emps.' Profit-Sharing Plan & Trust v. McClendon, et al.,* Case No. CIV-12-493-M (W.D. Okla., filed on May 2, 2012);

(vi)      *Robaczynski v. McClendon, et al.*, Case No. CIV-12-501-M (W.D. Okla., filed on May 3, 2012);

(vii)      *Spiegel v. McClendon, et al.,* Case No. CIV-12-502-M (W.D. Okla., filed on May 3, 2012);

(viii)      *Rosengarten v. McClendon, et al.,* Case No. CIV-12-505-M (W.D. Okla., filed on May 3, 2012);

(ix)      *Alberts v. McClendon, et al.*, Case No. CIV-12-545-M (W.D. Okla., filed on May 11, 2012);

(x)      *Gerber v. McClendon, et al.*, Case No. CIV-12-584-M (W.D. Okla., filed on May 21, 2012); and

(xi)      *Erickson v. McClendon, et al.*, Case No. CIV-12-631-M (W.D. Okla., filed on June 5, 2012).

These actions are collectively referred to as the "the 2012 Derivative Actions".[5]

In addition to the distinct factual allegations of the 2012 Derivative Actions, the *Shochat* and 2012 Derivative Actions differ substantially from this litigation in further, crucial ways. The *Shochat* and 2012 Derivative Actions all are premised upon the futility of pre-suit demand—*i.e.*, that a majority of the Board are not sufficiently independent or disinterested so as to be able to objectively consider a pre-suit demand to bring these claims. *See, e.g., Shochat* Compl. ¶¶ 73-85. In contrast, both of the Plaintiffs in this litigation **did make** pre-suit demands on the Board. *See Arnold* Compl. ¶¶ 95-99 & Exhibit 1; *Clem* Compl. ¶¶ 64-80 & Exhibit 1. (*See infra*, part II, for a discussion of the implications of this distinction.)

---

[5]      In addition to the 2012 Derivative Actions, there is at least one related class action filed in this Court against the Company and McClendon for alleged violations of the federal securities laws, *Weinstein v. McClendon, et al.,* Case No. CIV-12-465-M (W.D. Okla., filed on Apr. 26, 2012), and at least one related shareholder derivative action in State Court alleging breaches of fiduciary duties, *Painter v. McClendon, et al.,* Case No. CJ-2012-2545 (Okla. Dist. – Okla. Cnty., filed Apr. 27, 2012).

On May 3, 2012, Plaintiffs filed the Lift Stay Motion, seeking to lift the Stay Order to enable them to file an amended complaint that will add the new claims currently alleged in the 2012 Derivative Actions.  Plaintiffs seek to "promptly pursue the new claims" and state that they will seek to consolidate the 2012 Derivative Actions into this litigation.  Lift Stay Motion at 3, 24.

## ARGUMENT

The Stay Order in this litigation should be maintained, and there is no basis to consolidate this litigation with the 2012 Derivative Actions.  Plaintiffs in this Consolidated Action filed their claims in September 2011, based on specific allegations regarding actions that had taken place *in 2008*.  In the last few weeks, information regarding *new* acts of misconduct by certain officers and directors of Chesapeake has been revealed, prompting shareholders such as Intervenor Shochat to file original actions on behalf of Chesapeake based on these separate predicate acts.  The *Shochat* Action and the other 2012 Derivative Actions are the most appropriate vehicles to protect Chesapeake's interests regarding these new allegations, and there is no basis to support Plaintiffs' attempt to effectively assert control over all litigation remotely related to Chesapeake.  Plaintiffs' suggested course of action creates nothing but additional risk that the new harms perpetrated against Chesapeake by McClendon and other directors and/or officers will not be successfully prosecuted, given that Plaintiffs' claims in the Consolidated Action are already encompassed by the Settlement.

## I.   JUDICIAL ECONOMY WEIGHS IN FAVOR OF CONTINUING TO STAY THIS ACTION.

Plaintiffs' claims here, as in any shareholder derivative action, are representative in nature.  *Beard v. Love*, 173 P.3d 796, 802 (Okla. Civ. App. 8/28/07).  Instead of suing in an individual capacity, a shareholder derivative plaintiff asserts a right of the corporation to prosecute the wrongs committed, and "any action taken by the stockholders to redress such wrongs must be for the benefit of the corporation."  *Weston v. Acme Tool, Inc.*, 441 P.2d 959, 962 (Okla. 1968); *see also, Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95, 111 S.Ct. 1711, 1716 (1991) (derivative action permits individual shareholder to bring action on behalf of corporation).  As the Supreme Court recognized in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 549 (1949), a plaintiff who leads a shareholder's derivative suit occupies a position "of a fiduciary character," in which "[t]he interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity."  As such, the focus of the Court should be on the best avenue of recovery for Chesapeake, as opposed to the interests of any one particular plaintiff.  Here, it is Intervenor Shochat,[6] or, in the Court's discretion, one or more of the shareholders in the other recently-filed 2012 Derivative

---

[6]      Notably, in arguing that Plaintiffs and Co-Lead Counsel should be allowed to lead a consolidated derivative action concerning the new allegations, Plaintiffs cite *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*, 258 F.R.D. 260, 272 (S.D.N.Y. 2009) in support of the proposition that the Court should consider the work done by counsel when appointing counsel in a derivative action.  Lift Stay Motion at 25.  In *Bank of America*, however, the court appointed the firm Kahn Swick & Foti, LLC, counsel for Intervenor Shochat, as co-lead counsel, holding that "the work counsel has done in identifying or investigating potential claims in the action" favored appointment of Kahn Swick & Foti, LLC.  *Bank of Am.*, 258 F.R.D. at 272.

Actions, that are best suited to efficiently and effectively litigate these claims.  In fact, various motions for consolidation of the 2012 Derivative Actions and appointment of leadership over the consolidated action have been filed by various plaintiffs in the 2012 Derivative Actions, including Intervenor Shochat.[7]

Plaintiffs herein filed their claims in September 2011 based on specific allegations regarding actions that had taken place in 2008.  *See Arnold* Compl.; *Clem* Compl..  The *Shochat* Action and the other 2012 Derivative Actions allege completely separate claims regarding new misconduct by the Defendants.  Plaintiffs acknowledge that their motivation to amend their complaint is to add precisely these new, factually distinct allegations in order to then argue that the Settlement no longer encompasses all of their claims:

> Defendants successfully argued[8] that staying these consolidated actions was justified until now because the only issues in the cases related to McClendon's 2008 compensation, and similar claims were subject to an ongoing settlement approval process in the [State Court].  Now, however, ***Plaintiffs seek to assert new claims that fall outside the scope of those at issue in the State Court*** . . . .

Lift Stay Motion at 3 (emphasis added); *see also, id.* at 19 n.9 ("While sharing certain common factual and legal issues with Plaintiffs' compensation-related claims, ***Plaintiffs'***

---

[7]     *See, e.g.,* Plaintiff Shochat's (1) Cross-Motion for Consolidation of Related Cases and Appointment of Lead Plaintiff and Lead Counsel and Memorandum of Law in Support; and (2) Memorandum of Law in Opposition to: (i) Plaintiff Dolezal Family Limited Partnership's Motion to Consolidate Cases and to Appoint Lead Counsel Structure; and (ii) Plaintiffs Deborah G. Mallow IRA SEP Investment Plan, Christopher Snyder, and Brian F. Leonard's Cross-Motion to Consolidate All Related Cases and to Appoint Lead Counsel, attached as Exhibit 3 to the Strong Decl.

[8]     By this statement, Plaintiffs conveniently overlook that both they and Defendants ***jointly*** moved the Court for the Stay.  *See* Dkt. No. 42.

***new claims are distinct*** and would not be distinguished by an order from the" State Court affirming the Settlement.) (emphasis added).   However, Plaintiffs do not provide any authority to support their attempt to lift the Stay for this reason, and they also fail to provide support for their argument that they would be best suited to protect Chesapeake's interests regarding these new allegations.   Indeed, until now, Plaintiffs have demonstrated, not a desire to pursue claims on behalf of Chesapeake with zeal and alacrity, but rather a desire to ***delay*** doing so.   Among other things, they joined in the request to stay this litigation well before they even filed a pleading to consolidate the claims asserted in the *Arnold* Action and the *Clem* Action.   And, through repeated requests for extensions of time, followed by their Joint Motion to Stay, Plaintiffs have ensured that this litigation has made no progress at all.  *See* Dkt. 19, 25, 40, 42.

Moreover, because there has been no ruling by this Court, or any other court, that Plaintiffs are adequate representatives to litigate these claims, there is no prejudice to Plaintiffs in maintaining the Stay in this action.  By contrast, Intervenor Shochat, who has filed an original complaint specifically to address the misconduct and the claims that Plaintiffs now seek to add to their stayed and settled case, is more than adequately suited to vigorously prosecute the new claims.  A shareholder derivative action is representative in nature, a fact which essentially vitiates the issue of prejudice as to any one particular litigant.  *Weston*, 441 P.2d at 962; *Beard*, 173 P.3d at 802; *Kamen,* 500 U.S. at 95. Simply put, Plaintiffs cannot argue any prejudice as a result of maintaining the stay of the proceedings in the Consolidated Action premised upon the old claims.

By contrast, if the Stay Order is lifted as requested by Plaintiffs, Intervenor Shochat and the other new shareholder plaintiffs will suffer severe prejudice. Given that Plaintiffs' claims are encompassed by the Settlement, Plaintiffs' suggested consolidation of the two sets of actions would prejudice the ability of Chesapeake shareholders to seek recovery on behalf of Chesapeake, since the new allegations would become part of an older litigation whose claims are being released in the Settlement. Indeed, if Plaintiffs' new claims (which merely duplicate those of Intervenor Shochat and the other 2012 Derivative Action shareholders) are added to their existing complaint, and the Settlement becomes final through affirmation upon appeal, the new claims could become exposed to an argument that they were released under the doctrine of res judicata. *See, e.g., Goldman v. Northrup Corp.*, 603 F.2d 106, 109 (9th Cir. 1979); *Shlensky v. Dorsey*, 574 F.2d 131, 144 (3d Cir. 1978).

Further, until the resolution of Plaintiffs' appeal of the Settlement, the Plaintiffs' prosecution of all of the claims would be delayed. The interests of Chesapeake and Chesapeake's shareholders require that the 2012 Derivative Actions' claims move forward promptly, which will not occur if these claims are consolidated with the Consolidated Action and are put on hold awaiting the ruling from the State Court. Even if prosecution of the 2012 Derivative Actions' claims begins in the interim, and even if Plaintiffs' appeal is successful, the two sets of claims would then be at very different stages of litigation, resulting in delayed prosecution of the 2012 Derivative Actions' claims. Courts have consistently held that consolidation of actions that are at different stages of litigation in not appropriate because of the delay and possible prejudice it would

cause.  *See, e.g.*, *Bruno v. Borough of Seaside Park*, Civ. No. 04-5084, 2006 U.S. Dist. LEXIS 56758, at *7 (D.N.J. Aug. 11, 2006) (denying consolidation in part because actions were "at much different stages of litigation"); *Long v. Dickson*, No. 06-4012-SAC, 2006 U.S. Dist. LEXIS 47377, at *2 (D. Kan. Jan. 1, 2006) ("Because the two actions are at such widely separate stages of preparation, consolidation of these cases would cause further delay and could prejudice the parties."); *Aerotel, Ltd. v. Verizon Commc'ns, Inc.*, 234 F.R.D. 64, 67 (S.D.N.Y. 2005) (same).

Plaintiffs cavalierly suggest that "if Plaintiffs' appeal is denied the [Settlement] will be final and the release contained therein will be arguably applicable only to those issues relating to McClendon's 2008 compensation.  The compensation issues are ***easily separated*** from Plaintiffs' new allegations if necessary."   Lift Stay Motion at 23 (emphasis added).   It is for this very reason—that the new allegations are "easily separated" from the older 2008 compensation issues—that the Lift Stay Motion should be denied, since all of Plaintiffs' previous allegations are subject to extinguishment by the Settlement and all of the "new allegations" Plaintiffs wish to assert have already been commenced by Intervenor Shochat and eleven other shareholders in the 2012 Derivative Actions.   Plaintiffs are simply conceding that their claims are encompassed by the Settlement, and that their only hope of continuing to litigate a derivative action on behalf of Chesapeake is to paste new allegations already asserted by other shareholders into their old complaint.[9]

---

[9]      Plaintiffs attempt to disparage the 2012 Derivative Actions as "new claims with hastily prepared complaints."   Lift Stay Motion at 23.   Yet, in their own haste to take

If the Plaintiffs wanted to pursue the prosecution of the new, unrelated allegations, the obvious course of action would have been to file a new shareholder derivative action containing these allegations, as twelve other shareholders have already done, and to file a motion seeking appointment as lead plaintiff and lead counsel, as many of those same shareholders, including Intervenor Shochat, have already done. Belying their supposed "demonstrated and persistent refusal to abandon the Company's interests," Lift Stay Motion at 25, it is Plaintiffs themselves who evidently did not become aware of the new misconduct by Defendants until after *six* of the new 2012 Derivative Actions had already been filed. Caught unawares, Plaintiffs obviously hoped to do an end-run around the process by which the Court is to evaluate and appoint leadership over derivative actions based on the relative zeal and alacrity of various shareholders.

Plaintiffs are able to show no support for their suggestion that an acceptable practice in shareholder derivative litigation is to file a case on behalf of a company with certain allegations, then simply wait to see if new misconduct later occurs by the same defendants, and then (only after other shareholders have filed suit to attempt to remedy such new misconduct) to jump in with an "amended" complaint that mimics the other shareholders' allegations. As discussed above, the real party in interest is Chesapeake, and with respect to the new allegations, Chesapeake is more than adequately being represented by Intervenor Shochat and/or other shareholders without the overhang of

---

control of the 2012 Derivative Actions, Plaintiffs' counsel filed a Notice of Related Cases in which they misspelled their own name. *See* Dkt. No. 47 at 2 (referring to the law firm of "Robbins Umema").

older claims subject to release through Settlement and without the "leadership" of older shareholders who evidently slept on their rights.

## II. "DEMAND MADE" AND "DEMAND EXCUSED" CASES ARE SUBSTANTIVELY AND CRUCIALLY DIFFERENT AND, THEREFORE, SHOULD NOT BE CONSOLIDATED.

The Lift Stay Motion should be denied for a separate and independent reason. Plaintiffs acknowledge that, if the Stay Order were lifted, they would seek to consolidate the *Shochat* Action and the other 2012 Derivative Actions with this Consolidated Derivative Action. But the two sets of actions are not properly consolidated. There are important, substantive differences between cases involving a pre-suit demand made on the Board of Directors ("Demand Made" cases), such as the complaints filed in this action, and cases pleading that such a demand would be futile ("Demand Excused" cases), such as the 2012 Derivative Actions (as well as that portion of Plaintiffs' proposed amended complaint which contains new allegations). The legal differences between "Demand Made" and "Demand Excused" actions warrant that these actions be maintained as separate proceedings, with separate leadership—and that Plaintiffs' request to file a complaint containing both "Demand Made" allegations and "Demand Excused" allegations be denied. Since Intervenor Shochat and the other 2012 Derivative Action plaintiffs have filed Demand Excused shareholder derivative complaints, these shareholders stand in a substantially different position than the Plaintiffs. Moreover, in Plaintiffs' proposed amended complaint, Plaintiffs' intend to assert that, while demand was made for the previously-asserted allegations, demand is excused for the new allegations. *See* Lift Stay Motion, Ex. 1 at 131-52. The 2012 Derivative Actions are

15

likely to be consolidated with one another—and, in fact, three motions seeking consolidation of the 2012 Derivative Actions are currently pending, *see* Strong Decl. Ex. 3—and since all of the 2012 Derivative Actions plead demand futility in their complaints, the 2012 Derivative Actions, as well as the new claims Plaintiffs wish to assert, are at odds with this litigation.

Consolidation of actions in federal court is governed by Rule 42 of the Federal Rules of Civil Procedure, which provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a).  In considering consolidation, this Court has broad discretion to balance consideration of convenience and economy against the potential prejudice of any party.  *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284-85 (2d Cir. 1990).  However, many federal appellate courts, in reviewing lower courts' exercise of this broad discretion, have cautioned against "the systemic urge to aggregate litigation."  *See, e.g.*, *In re Repetitive Stress Injury Litig.,* 11 F.3d 368, 373 (2d Cir. 1993); *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 853 (2d Cir. 1992).  As here, where special circumstances exists, courts call for an "examin[ation of] the special underlying facts with close attention before ordering consolidation."  *In re Repetitive Stress Injury,* 11 F.3d at 373.

The *Shochat* Action, as well as all of the other 2012 Derivative Actions, plead demand futility, which in essence alleges that the Board is so conflicted and/or not disinterested that any attempt to addresses the allegations raised in the *Shochat* Complaint would be futile.  *See, e.g., Shochat* Compl. ¶¶ 73-85.  In contrast, both of the Plaintiffs in this litigation made pre-suit demands on the Board.  *See Arnold* Compl. ¶¶ 95-99 & Exhibit 1; *Clem* Compl. ¶¶ 64-80 & Exhibit 1, *see also,* Lift Stay Motion, Ex. 1 at 131-39 (alleging pre-suit demand for previously-asserted claims).  Therefore, factual and legal issues relating to the issue of demand futility are *not* pertinent to the claims originally asserted in this action.

The difference is extremely important because a shareholder who makes pre-suit demand on a Board of Directors concedes, by this very act, that the Board is sufficiently independent and disinterested to objectively consider the demand—a position that is in conflict with shareholders who allege that demand is futile, because the Board is *not* independent and disinterested to consider demand.  *Levine v. Smith*, 591 A.2d 194 (Del. 1991) makes this distinction clear:

> The focus of a complaint alleging wrongful refusal of demand is different from the focus of a complaint alleging demand futility.  The legal issues are different; therefore, the legal standards applied to the complaint are necessarily different.  A shareholder plaintiff, by making demand upon a board before filing suit, tacitly concedes the independence of a majority of the board to respond.  Therefore, when a board refused a demand, the only issues to be examined are the good faith and reasonableness of its investigation.  When a shareholder files a derivative suit asserting a claim of demand futility, hence demand excused, the basis for such a claim is that the board if (1) interested and not independent; and (2) that the transaction attacked is not protected by the business judgment rule.

*Id.* at 212 (internal quotation marks and citations omitted).[10]

The fundamental differences between "Demand Made" and "Demand Excused" cases are reflected in the pre-trial orders entered in *In re AOL Time Warner Shareholder Litigation,* Master File No. 02-CV-6302 (S.D.N.Y.).   There, the late Judge Shirley Kram had originally signed an unopposed Pre-Trial Order No. 1 ("PTO 1") which consolidated a number of "Demand Excused" derivative actions.   *See* Strong Decl. Ex. 4.   Once a "demand made" case was filed concerning the same factual allegations, however, counsel for these new plaintiffs found the original PTO 1 unworkable for legal and factual reasons.   After filing a motion to address these issues, Judge Kram entered Pretrial Order No. 2 ("PTO 2"), dated May 25, 2004, in which she separated the "Demand Excused" cases from the "Demand Made" cases and appointed separate Lead Counsel for each type of derivative case.   *See* Strong Decl. Ex. 5.   Pursuant to PTO 2, Judge Kram established a Master File and a Master Docket for the consolidation of the proceedings in all the derivative actions (PTO 2, ¶ 3.) and appointed a Lead Counsel for the "Demand Excused" actions and separate Lead Counsel for the "Demand Made" actions (PTO 2, ¶ 10).   This was due to the "materially differing legal and factual positions of the various plaintiffs relative to Nominal Defendant Time Warner, Inc."   *Id.; see also, In re Moody's Corp.*

---

[10]     Pleading requirements for derivative actions on behalf of Oklahoma corporations are governed by the Oklahoma General Corporation Act, which is based on Delaware law, and "in the absence of Oklahoma authority [courts] may consult decisions from the courts of Delaware and other jurisdictions concerning derivative actions."   *Beard*, 173 P.3d at 802; *see also Hargrave v. Canadian Valley Elec. Co-op., Inc.*, 792 P.2d 50, 54 (Okla. 1990) (citing federal case law to find that demand futility rule applies to derivative actions prosecuted pursuant to Oklahoma law); *Walden v. Elrod*, 72 F.R.D. 5, 13 (W.D. Okla. 1976) (same).

*S'holder Deriv. Litig.,* Master File No. 1:08-CV-9323 (S.D.N.Y.), Dkt. No. 17 (in light of the differences between "demand excused" and "demand made" derivative actions, court ordered for the consolidation of the "demand excused" and "demand made" actions under one Master Docket, coordination of the proceedings through separate dockets for each the "demand excused" and "demand made" actions, and appointment of one "demand excused" counsel and one "demand made" counsel as co-lead counsel) (Strong Decl. Ex. 6).

Like the PTO 1 entered by the demand excused plaintiffs in *In re AOL Time Warner*, Plaintiffs' Lift Stay Motion makes no provision for consideration of the fundamentally different legal issues present in "Demand Excused" versus "Demand Made" derivative actions and allegations. Plaintiffs also intend to allege that demand was futile as regards the new allegations only, and therefore their complaint would assert Demand Made and Demand Excused allegations within the same complaint. *See* Lift Stay Motion, Ex. 1 at 139-52. As explained above, this consolidation is unsupported by the law, and would amount to conceding the independence of the Board to respond to the demand, which would be inconsistent with pleading demand futility for the new claims. Although all presently-filed derivative actions are asserted on behalf of Chesapeake against many of the same Defendants, the Demand Made actions raise different core legal issues, with a different factual focus from those raised by Intervenor Shochat, the other 2012 Derivative Actions, and Plaintiffs' proposed new claims.

In their reply brief, Plaintiffs will argue that there is no risk to asserting Demand Made and Demand Excused allegations within the same complaint. *See* Plaintiffs'

Response In Opposition to Jacob Shochat's Motion to Intervene at 5-8 (addressing arguments by Plaintiff Shochat in proposed opposition to Lift Stay Motion), Dkt. No. 59 ("Opposition to Intervention").   The crux of their argument is that where new facts become known, a prior demand on a Board of Directors cannot concede the independence of the Board to consider a demand to bring claims based on new facts.   *Id*. at 5-6 (citing *Seibert v. Harper & Row Publishers, Inc.*, 1984 WL 21874, at *3 (Del. Ch. Dec. 5, 1984)).   *Seibert*, however, does not stand for that proposition.   There, the court found that the prior "demand" was not a demand at all, because "its stated purpose was not to demand that specific corrective action be taken," but simply to request a meeting with the Board.   1984 WL 21874, at *3.   Here, Plaintiffs' original demands on the Chesapeake Board were, in fact, demands to take corrective action, and they were refused.   *See Arnold* Compl., Exhibit 1; *Clem* Compl., Exhibit 1 (Arnold's and Clem's original demand letters).   Moreover, Plaintiffs' argument amounts to the proposition that a shareholder can make a demand on a Board to investigate claims concerning a CEO's compensation, and then make new claims regarding the same CEO's compensation, without being found to have conceded the Board's independence with respect to that issue.

Finally, Plaintiffs will argue that, if anything, their "past demand efforts" offer "a unique demand futility argument with regard to the New Claims that none of the other shareholders (including Shochat) assert or can reasonably assert."   *See* Opposition to Intervention at 7.   But under Delaware law, there is no argument that <u>prior</u> refused demands support <u>current</u> demand futility arguments.   It is well-settled that an alleged failure to take corrective action in response to previous demands is inadequate to

demonstrate demand futility. *See Lewis v. Graves*, 701 F.2d 245, 249 (2d Cir. 1983) (applying Delaware law); *Allison v. Gen. Motors Corp*., 604 F. Supp. 1106, 1113 (D. Del. 1985). Plaintiffs' contention that it would have been futile for them to make a demand because the Board has previously rejected previous demands is contrary to Delaware law. Even assuming that the previous demands included the same allegations at issue in the New Claims (which they do not) it is well-established that a Board's rejection of a prior demand does not demonstrate futility unless plaintiff can demonstrate that the first refusal was wrongful. *In re Merrill Lynch & Co., Inc., Sec., Deriv. and ERISA Litig.*, No. 01 Civ. 9633, 2011 WL 1134708, at *10 (S.D.N.Y. Mar. 28, 2011) (applying Delaware law).

## <u>CONCLUSION</u>

For the foregoing reasons, Intervenor Shochat respectfully requests that the Court maintain the stay in this action, and deny the Lift Stay Motion filed by Plaintiffs.

Date: June 7, 2012 By:/s/ Don S. Strong

**STRONG, MARTIN & ASSOCIATES, PLLC.**
Don S. Strong, OBA No. 13874
dss@strongmartin.com
G. Stephen Martin, OBA No. 17091
gsm@strongmartin.com
2700 First National Center
120 North Robinson Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 604-7500
Facsimile: (405) 604-7503

**KAHN SWICK & FOTI, LLC**
Lewis S. Kahn (*pro hac vice* application to be filed)
lewis.kahn@ksfcounsel.com
Albert M. Myers (*pro hac vice* application to be filed)
albert.myers@ksfcounsel.com

21

Melinda A. Nicholson (*pro hac vice* application to be filed)
melinda.nicholson@ksfcounsel.com
206 Covington Street
Madisonville, Louisiana 70447
Telephone: (504) 455-1400
Fax: (504) 455-1498

*Attorneys for Intervenor Jacob Shochat*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 7, 2012, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system, as listed below.

/s/ Don S. Strong
Don S. Strong

**HOLLOWAY BETHEA & OSENBAUGH PLLC**
Kenyatta R. Bethea
3035 N.W. 63rd Suite, 102N
Oklahoma City, OK 73116
kbethea@hbolaw.com

*Counsel for Plaintiffs Arnold and Clem*

**ROBBINS UMEDA**
George C. Aguilar
Jay N. Razzouk
600 B Street, Suite 1900
San Diego, CA 92101
rsalazar@robbinsumeda.com
jrazzouk@robbinsumeda.com

*Counsel for Plaintiff Arnold*

**HOLZER HOLZER & FISTEL, LLC**
Marshall P. Dees
Michael I. Fistel, Jr.
200 Ashford Center North, Suite 300
Atlanta, GA 30338
mdees@holzerlaw.com
mfistel@holzerlaw.com

*Counsel for Plaintiff Clem*

**MCAFEE & TAFT, A.P.C.**
James R. Webb

Spencer F. Smith
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102
jim.webb@mcafeetaft.com
spencer.smith@mcafeetaft.com

*Counsel for Defendants*

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
Robert P. Varian
M. Todd Scott
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

*Counsel for Defendants*